**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

BRYAN KEITH CAMPBELL                                              CASE NO. 11-51573

DEBTOR

## MEMORANDUM OPINION AND ORDER

The issue before the Court is whether the Debtor, Bryan Keith Campbell's, obligation to pay his non-dischargeable student loan debt of approximately $330,000.00 qualifies as a "special circumstance" within the meaning of 11 U.S.C. §707(b)(2)(B)(i) to rebut the presumption of abuse under 11 U.S.C. §707(b).  For the reasons below, the Court holds that Debtor has not rebutted the presumption.

## PROCEDURAL POSTURE

On August 9, 2011, the United States Trustee timely filed a Motion to Dismiss Case for Abuse ("Motion") [DOC 13] based upon (a) the presumption of abuse that arises pursuant to 11 U.S.C. §707(b)(2), and (b) the totality of the circumstances of Debtor's financial situation pursuant to 11 U.S.C. §707(b)(3)(B).  The parties stipulated that the case is presumptively abusive under 11 U.S.C. §707(b)(2)(A)(ii) because Debtor's current monthly income reduced by allowed deductions and multiplied by 60 exceeds $11,725.00.

Debtor filed an Objection to the Motion [DOC 18] arguing that (a) he has rebutted any presumption of abuse by demonstrating "special circumstances" as required by 11 U.S.C. §707(b)(2)(B)(i), and (b) the totality of his financial circumstances do not warrant dismissal of the case under 11 U.S.C. §707(b)(3)(B).  Debtor filed an Affidavit [DOC 17] describing his "special circumstance" as his obligation to pay non-dischargeable student loan indebtedness of $330,742.00 with minimum payments of $2,319.00 per month, which is 84% of Debtor's

1

unsecured non-priority debts.  The Affidavit further discloses that Debtor is employed as a mechanical engineer and has an annual salary of approximately $74,000.00.

On Debtor's Statement of Current Monthly Income and Means-Test Calculation (Official Form B22A), Debtor asserted the additional expense of $2,319.00 for student loan payments to qualify as a special circumstance to rebut the presumption of abuse.

On December 20, 2011, an evidentiary hearing was held.  Pursuant to the pre-hearing order, the parties each offered exhibits into evidence which were unopposed by the other.  In addition, the parties stipulated, among other things, to the following:[1]

1.  The Debtor attended Eastern Kentucky University from 1993 to December 1996 where he obtained a Bachelor of Science degree in Physics (granted in 2000 due to a double-degree program with the University of Kentucky). The Debtor subsequently transferred to the University of Kentucky where he was a full-time student from January 1997 to May 2000, and a part-time student from 2000 to 2009.  While at the University of Kentucky, the Debtor obtained his Bachelor of Science degree in Engineering (granted in the spring of 2000), his Masters of Business Administration degree (granted in 2005), and his Masters of Mechanical Engineering decree (final project not completed).

2.  The Debtor incurred student loans while attending college from 1993 through 2009, but the last student loan was incurred in 2007.  The student loans were used by the Debtor to pay educational and living expenses during the period 1993-2009.

3.  The Debtor's student loan balances with principal and interest currently total $330,742.00 as of the petition date.  The minimum current monthly payments on the student loans are $2,319.00.  The actual loan principal amounts for the years 1993 to 2000 are unknown to the Debtor as these are consolidated loans. From August 2003 through September 2007, the Debtor obtained student loans in the original principal amount of $189,676.00.

4.  Records from Eastern Kentucky University documenting Debtor's educational expenses for 1993-1996 are unavailable.  For the four years the Debtor attended Eastern Kentucky University, he lived on campus.  The Debtor only used the on-campus meal plan for one semester.  The remainder of the time he purchased food as needed.

---

[1] The Court has not repeated all of the parties' stipulations and has omitted certain stipulations, including charts, all of which were considered by the Court, but do not impact the Court's conclusions herein.

5. The Debtor's estimate of housing expense from spring 1997 through spring 2009 was $500.00 per month. From the spring of 1997 through spring 2009, the Debtor was living off-campus and dining primarily off-campus. The Debtor's utility expenses, excluding cell phones, from the spring of 1997 through spring 2009 were $225.00 per month.

6. The Debtor used some portion of his student loan proceeds for monthly car payments, computers, and medical expenses.

7. From 1991 to 1999, Debtor worked part-time as a cashier at Krogers. The Debtor worked full-time at Trane from June 2000 through 2003. The Debtor was unemployed for the first part of 2004. In mid to late 2004, the Debtor worked full-time for a temp Agency (Aerotech) at Lexmark.

8. The Debtor began full-time employment at Lexmark in mid 2005 with an annual salary of approximately $60,000.00. In 2007, the Debtor earned $63,672.00 from Lexmark. In 2008, the Debtor earned $67,297.00 at Lexmark and $2,740.00 as a volleyball referee. In 2009, the Debtor earned $69,668.00 at Lexmark. In 2010, the Debtor earned $70,857.00 at Lexmark.

9. In 2006, Debtor's employer Lexmark, reimbursed Debtor for his academic expenses for that year. Debtor does not know the amount of this reimbursement, and has not been able to locate any documents setting forth this amount. In spring 2008-2009, Lexmark paid the Debtor's Engineering Grad Course fee of $270.00 and the Debtor's tuition and fees of $2,622.00.

10. The Debtor's Schedule F lists Unsecured Non-Priority Claims that total $393,763.94.

11. The Debtor has $63,021.94 in Schedule F Unsecured Non-Priority Claims other than student loans.

12. The Debtor's student loans constitute approximately 84% of all Schedule F Unsecured Non-Priority claims.

13. Schedules I and J accurately reflect the Debtor's current income and expenses.

14. Debtor's transportation expense of $250.00, is composed of $200.00 fuel and $50.00 maintenance.

15. The Debtor is currently employed as a mechanical engineer at Lexmark, and has an annual salary of $74,000.00.

16. In 2007, Debtor received a $1,449.00 Lexmark Incentive Program ("LIP") bonus. In 2008, Debtor received a $329.87 LIP bonus. In 2009, Debtor

    received a $1,073.23 LIP bonus.  In 2010, Debtor received a $978.56 LIP bonus. In 2011, Debtor received a $4,934.25 LIP bonus.

17. In March 2009, Debtor received a Profit bonus of $362.61.  In March 2011, Debtor received a Manager Award bonus of $150.00.

18. The Debtor borrowed $4,900.00 from his 401K on August 18, 2008.  The Debtor used this money to pay personal living expenses. As indicated on his pay slip, the Debtor is repaying this loan at the rate of $47.60 every two weeks ($103.13 per month).  The loan will be paid off on August 17, 2013.

19. As shown on the Debtor's pay slip, the Debtor makes a bi-weekly 401K contribution of $142.31.  This contribution is not mandatory.

20. The Debtor owns a 2007 Honda Civic.  The monthly payment for this car loan is $575.00. The Debtor intends to reaffirm this debt.  This loan will be paid off in January 2012. Debtor's means test calculation is accurate.

21. The means test correctly reflects that the presumption of abuse arises.

22. Debtor's counsel, Peter Brackney, has a current hourly rate of $200.00 which is adjusted periodically.

23. Beginning in February 2012, the Debtor will have an additional $575.00 available due to the payoff of his 401K loan.

24. Beginning in September 2013, the Debtor will have an additional $103.13 available due to the payoff of his 401K loan.

25. The promissory notes underlying at least some of the Debtor's student loans provide for the collection of attorney's fees.

At the evidentiary hearing, Debtor's direct testimony largely reiterated and refined the parties' stipulations.  On cross-examination, the Debtor testified generally that he eats breakfast at Lexmark 90% of the time, eats lunch out 50% of the time and eats dinner out 3-4 times per month. He further stated that:

- Lexmark has paid his tuition at least twice.
- He purchased a Geo Metro while attending Eastern Kentucky University.
- He purchased a Mitsubishi Eclipse while attending the University of Kentucky.
- He purchased a Ford Mustang in 2000 for $28,000.00 - $29,000.00.

- In 2007-2010, he filed tax returns.

- He received a refund of $1,315.00 from the United States for 2007 taxes.

- He paid over $700.00 to the United States for 2008 taxes.

- He received a refund of $3,811.00 from the United States for 2009 taxes.

- He received a refund of $2,440.00 from the United States for 2010 taxes.

- He received a 401K loan from Fidelity.

- He started employment with Lexmark in 2005 at a $60,000.00 annual salary.

- He received a 3.49% raise in 2006.

No information was offered concerning the circumstances surrounding the Debtor's need for or borrowing of the subject student loans, other than the following statement found in Debtor's direct testimony affidavit:

> Affiant acknowledges that not all Student Loans were incurred for the payment of tuition, fees, books or housing, Affiant believes that the large balance of Student Loan indebtedness was caused, at least in part, by the predatory practices of private student loan companies whereby the lending of large loans was made to less-than-creditworthy debtors but with lenders being protected by the amendments to non-dischargeability of student loans which were put into effect in 2005. [DOC 33 ¶ 6].

Attorney W. Thomas Bunch testified as an expert witness on behalf of the Debtor. His testimony was limited to addressing why Chapter 11 relief would not be a reasonable alternative for the Debtor.

At the conclusion of the evidentiary hearing, the Court took the matter under submission.

## **ANALYSIS**

The Court has jurisdiction herein pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §1409.

11 U.S.C. §707(b)(1) provides:

> After notice and a hearing, the court, on its own motion or on a motion by
> the United States trustee, trustee (or bankruptcy administrator, if any) or

5

> any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. . .

There is no dispute that this individual Debtor's debts are primarily consumer debts. Furthermore, there is no dispute that the presumption of abuse arises. But this presumption of abuse may be rebutted by "special circumstances."

Section 707(b)(2)B(ii), (iii) and (iv) provide certain procedural requirements to establish "special circumstances." Likewise, there is no dispute that the Debtor has complied with these procedures [*see generally* DOC 17].

> 11 U.S.C. §707(b)(2)(B)(i) provides:
>
> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as serious medical condition or a call to order to active duty in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

Whether the Debtor has demonstrated "special circumstances" is disputed. As noted above, Debtor contends that his "special circumstance" is his obligation to pay a monthly payment of $2,319.00 on his non-dischargeable student loan debt of approximately $330,000.00 which constitutes 84% of his unsecured, non-priority indebtedness. If the Court finds "special circumstances" to justify the additional student loan expense, the Debtor must then show that there is not reasonable alternative to the resulting expense.

The party who is asserting that a debtor's case is abusive holds the burden of proof. Once the presumption of abuse has been established under §707(b)(2)(A), the burden of persuasion shifts to the debtor to rebut the presumption. *See generally* Williams v. McDown, Jr. (In re Williams), Case No. 5:10cv00049, 2010 WL 3292812 (W.D. Va. 2010). Here, the burden of demonstrating "special circumstances" has shifted to the Debtor. The U.S. Trustee has the

burden of proof as to his request to dismiss for abuse pursuant to the "totality of circumstances" analysis under §707(b)(3)(B).

Thus, the initial determination for the Court is whether the Debtor has demonstrated "special circumstances" within the meaning of the statute. The determination of whether a particular circumstance is special should be made on a case-by-case basis. There is no *per se* circumstance that is special. *See generally* In re Davis, Case No. 10-47600, 2011 WL 5884015 (Bankr. N.D. Tex. Nov. 23, 2011).

Many courts have considered whether the existence of a student loan debt qualifies as a "special circumstance." Such decisions are aptly summarized by Judge Deasy in In re Pageau, 383 B.R. 221 (Bankr. D. N. H. 2008):

> To date, the courts considering the issue of whether the presumption of abuse can be rebutted under the provision of §707(b)(2)(B), on the basis of student loan debt have reached different results. Several courts have held that student loans do constitute special circumstances. *Robinette*, 2007 WL 2955960, at *4 ('The Court agrees with the cases that have found these expenses to be special circumstances, because there is no reasonable alternative to making the payments'); *Martin*, 371 B.R. at 356 (deciding that the existence of student loan debt 'is a distinct, particular, additional, and extra factor which this Court should consider in determining whether abuse exists here' and concluded that the student loan debt was a 'special circumstance'); *Knight*, 370 B.R. at 438-39 (ruling the unique characteristics of student loan debt may qualify it as a special circumstance warranting its inclusion as an expense and deduction from a debtor's projected disposable income in chapter 13 as such debt is nondischargeable and is incurred due to the high cost of education and as a result of public policy that encourages the pursuit of education by providing loans to students); *Delbecq*, 368 B.R. at 761-62 (indicating that the debtor did not have a meaningful ability to repay her debts outside of bankruptcy or under chapter 13 because of her student loan and therefore she had rebutted the presumption of abuse by demonstrating special circumstances); *Harman*, 366 B.R. at 318 (concluding the debtor had no reasonable alternative but to incur the monthly expense for her son's student loan obligation); *Templeton*, 365 B.R. at 216-17 (ruling the debtors had no reasonable alternative other than to pay the student loans as they are nondischargeable and therefore the debtors rebutted the presumption of abuse).
>
> Other courts have concluded that student loans do not fall within the special circumstances provision. *Vaccariello*, 375 B.R. at 814-15 (deciding

7

>
> the debtors failed to meet the requirement of §707(b)(2)(B)(ii)(II) to provide 'a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable' and further stating the court 'is not persuaded that merely because a debt is not dischargeable it can or should constitute a special circumstance'); *Lightsey*, 374 B.R. at 381 n. 3 ('I reject the notion that student loan payment obligations can be utilized to adjust a debtor's expenses upward to reduce net income and avoid the means test threshold because they are nondischargeable debts.'). Id. at 227-228.

As noted by the Pageau court, many of the cases discussed above focus on the student loan expense itself as a "special circumstance"—this would appear to be inapposite to the plain statutory language which requires a "special circumstance" which justifies an additional expense—not an expense which itself is a "special circumstance:"

> In this Court's view, the Debtor's Student Loan should not be included as an additional expense on the Means Test Form. The examples in §707(b)(2)(B)(i), which provide guidance as to what may constitute special circumstances, do not identify specific expenses, but rather identify some circumstances that give rise to such expenses…It is not the obligation to repay a loan itself that qualifies such an expense as a special circumstance under §707(b)(2)(B)(i), but rather it is the circumstances that lead to incurring a loan that must be special and justify the inclusion of this additional expense item in the means test, as long as the debtor has no reasonable alternative but to make monthly payments on such loan. Id. at 228 (citations omitted).

The Court finds the reasoning of Pageau persuasive. Here, other than his conclusory statement that the student loans were incurred as a result of the "predatory practices of private student loan companies," the Debtor has presented no evidence of the circumstances which gave rise to his incurrence of the debt. That the debtor obtained student loans to achieve his advanced degree(s), without more, is not sufficient:

> Educational loans incurred in pursuit of education and training that is necessitated by permanent injury, disability or an employer closing might constitute special circumstances because such events are outside the control of a debtor as are the two examples in the statute. However, the Court need not explore such questions in this case. Here, the Debtor provided no evidence as to any special circumstances that caused her to borrow money to fund her education. Rather, the record before the Court supports a finding that the Debtor incurred the Student Loan in the ordinary course of acquiring her education and without any special circumstances.

8

Id. at 228 (citations omitted).

The Court must give meaning to the word "special" and finds, as noted in Davis, the analysis under §707(b)(2)(B) leaves discretion with the court to account for differences between individual debtors. "The focus must be on whether the debtor is, of necessity, in a different situation than the typical debtor addressed by the IRS guidelines." Davis, 2011 WL 5884015 at *5; see also In re Vaccariello, 375 B.R. 809, 816 (Bankr. N.D. Ohio 2007) ("Similarly, funding higher education through the use of student loans is becoming ubiquitous. It cannot be argued that having a student loan is rare or unusual; therefore, Debtors' obligation to repay their student loans, standing alone, cannot constitute special circumstances.").

A logical corollary of this conclusion is that the mere fact that the student loan debt at issue here is non-dischargeable does not constitute a special circumstance within the meaning of the statute. Pageau, 383 B.R. at 228. Likewise, that the Debtor is not eligible for a Chapter 13 proceeding does not constitute a "special circumstance." In re Burggraf, 436 B.R. 466, 475 (Bankr. N.D. Ohio 2010).

Because the Debtor did not demonstrate the existence of a special circumstance which justifies the additional monthly student loan expense, it is unnecessary for the Court to reach the issue of whether there is a reasonable alternative to the payment of this expense. Likewise, it is unnecessary to address the U.S. Trustee's alternative ground for dismissal, that the "totality of Debtor's circumstances" constitutes abuse and require a dismissal of the case pursuant to §707(b)(3).

## **CONCLUSION**

Because the Debtor has failed to rebut the presumption of abuse, the case must be dismissed or converted. The parties have stipulated that the Debtor is not eligible for a Chapter 13 proceeding. Accordingly, the Debtor shall have 14 days from the entry of this order within which to file a motion to convert to Chapter 11, or this case shall be dismissed.

9

Copy to:

Debtor
Peter J.W. Brackney, Esq.
U.S. Trustee

10

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:
*Tracey N. Wise*
Bankruptcy Judge
Dated: Wednesday, January 18, 2012
(tnw)**